## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LUMBERFIOUS ARNOLD,

      Petitioner,

v.                                                    Case No. 8:23-cv-60-WFJ-SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## <u>ORDER</u>

Lumberfious Arnold, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Docs. 1, 2). Respondent filed a response opposing the petition. (Doc. 12). Mr. Arnold filed a reply. (Doc. 16). After careful review, the petition is **DENIED**.

### I.    Background

This case arises from a residential burglary in Largo, Florida. The victim lived in the residence with her two minor children. (Doc. 13-2, Ex. 5, at 83-84, 95-96). Around 6:00 a.m. on February 6, 2015, the victim left home to work a twelve-hour shift at a hospital. (*Id.* at 85-86). Her children spent that day and the next with her ex-husband. (*Id.* at 87, 140). The victim did not return home in the evening. (*Id.* at 87). Instead, she spent the night with her boyfriend at his apartment. (*Id.*)

The victim and her boyfriend went to work the following morning. (*Id.* at 139-40). When their shifts ended, the boyfriend "went straight to" the victim's house while she

1

"stopped at her ex-husband's house to pick up the kids." (*Id.* at 140). Upon his arrival, the boyfriend immediately noticed that the house was "in total disarray," with "stuff all over the place." (*Id.* at 140-41). The victim arrived soon after; she discovered that "everything of value was gone," including a diamond engagement ring, a wedding ring, two birthstone rings, a television, and a laptop. (*Id.* at 102, 104-05, 113, 115). The police were called. (*Id.* at 142). Their investigation revealed that the burglar had entered the house by breaking the lock on a closed kitchen window and removing its screen. (*Id.* at 91-94). No usable fingerprints were left at the scene. (*Id.* at 153).

Law enforcement eventually learned that, on the afternoon of February 6, 2015, Mr. Arnold had sold the victim's engagement ring, wedding band, and one of her birthstone rings at a pawn shop in Largo. (*Id.* at 111-12; *see also id.*, Ex. 6). The thumbprint on the "pawn form" matched Mr. Arnold's thumbprint, and surveillance footage captured the transaction. (*Id.*, Ex. 5, at 31-32, 38, 64). Mr. Arnold received a total of $195 for the rings, but the pawnbroker acknowledged that their retail value was significantly higher. (*Id.* at 60-61).

Mr. Arnold was arrested and ultimately charged with burglary of a dwelling and dealing in stolen property. (*Id.*, Ex. 3). The case went to trial. Mr. Arnold testified in his defense, claiming that he and his ex-fiancée, Sonya Hicks, bought the rings and several other pieces of jewelry from "a lady named Stacy." (*Id.*, Ex. 5, at 197-98). Mr. Arnold had allegedly met Stacy through Craigslist "a couple weeks" earlier, when he purchased a "bedroom set" from her. (*Id.* at 197, 199). According to Mr. Arnold, he and Ms. Hicks were not "interested in the rings," so he sold them at a pawn shop "on the way home." (*Id.* at

2

198). On cross-examination, Mr. Arnold admitted that he was a five-time convicted felon. (*Id.* at 200).

The jury found Mr. Arnold guilty as charged. (*Id.*, Ex. 9). The trial court sentenced him to a total of thirty years in prison—fifteen years for burglary as a prison releasee reoffender, followed by fifteen years for dealing in stolen property. (*Id.*, Ex. 10). The appellate court affirmed the convictions in an unexplained decision. (*Id.*, Ex. 15). Next, Mr. Arnold unsuccessfully moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Exs. 26, 27, 31). This federal habeas petition followed. (Docs. 1, 2).

## II.    Standards of Review

### A.    AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

3

the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The appellate court affirmed Mr. Arnold's convictions, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

4

### B.     Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

### C.    Ineffective Assistance of Counsel

Mr. Arnold alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mr. Arnold must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Mr. Arnold must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA

deference, the resulting standard of review is doubly deferential."). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## III.    Discussion

### A.    Ground One—Failure to Request Lesser-Included Offense Instructions

Mr. Arnold contends that trial counsel was ineffective for failing to request lesser-included offense instructions for dealing in stolen property. (Doc. 1 at 4). According to Mr. Arnold, counsel should have ensured that the jury had the option to convict him of grand theft or petit theft, both of which are lesser-included offenses of dealing in stolen property. (*Id.*)

The postconviction court held that this claim failed for lack of "prejudice." (Doc. 13-2, Ex. 27, at 2). It rejected "the proposition that there is even a substantial possibility that a jury which has found every element of an offense proved beyond a reasonable doubt, would have, given the opportunity, ignored its own findings of fact and the trial court's instructions on the law and found a defendant guilty of only a lesser-included offense." (*Id.* (citation omitted)). Thus, according to the court, "[w]hen a jury has found a defendant guilty of a crime, there can be no prejudice from counsel's failure to argue for a lesser-included offense." (*Id.*) Because "the jury found [Mr. Arnold] guilty of dealing in stolen

property," he could not show prejudice from "counsel's failure to request instructions on lesser-included offenses." (*Id.* at 2-3).

The rejection of this claim was reasonable. Florida law requires a jury to "render a true verdict according to the law and the evidence." *Sanders v. State*, 946 So. 2d 953, 958 (Fla. 2006). Thus, a jury may convict of a lesser-included offense "only if it decide[s] that the main accusation has not been proved beyond a reasonable doubt." *Id.* In accord with this principle, the jury in Mr. Arnold's case was instructed that if it "return[ed] a verdict of guilty, it should be for the highest offense which has been proven beyond a reasonable doubt." (Doc. 13-2, Ex. 5, at 320). The Court must assume that the jury followed this instruction. *See Strickland*, 466 U.S. at 694 ("[A] court should presume . . . that the judge or jury acted according to law."). As noted above, the jury found Mr. Arnold guilty of dealing in stolen property—a higher offense than grand or petit theft. (Doc. 13-2, Ex. 9). Therefore, "even if the lesser-offense instructions had been given, the jury would not have been permitted to convict [Mr. Arnold] of the lesser-included offenses because it had concluded that the evidence established that he was guilty of the greater offense[]." *Crapser v. Sec'y, Dep't of Corr.*, 855 F. App'x 626, 628 (11th Cir. 2021).

Mr. Arnold's claim "depends . . . on the possibility of a jury pardon—that is, that the jury would have disregarded its oath and violated its instructions by acquitting him of the greater offense and convicting him of a lesser one even though the evidence supported both crimes." *Id.* "The possibility of a jury pardon, however, cannot establish prejudice under *Strickland*." *Thornton v. Sec'y, Fla. Dep't of Corr.*, No. 3:18-cv-762-MMH-PDB, 2021 WL 2073685, at *9 (M.D. Fla. May 24, 2021); *see also Santiago v. Sec'y, Fla. Dep't*

*of Corr.*, 472 F. App'x 888, 889 (11th Cir. 2012) ("The jury in [petitioner's] trial concluded that the evidence against him supported his conviction for the greater offenses on which it was instructed; therefore, even if the lesser-offense instructions had been given, the jury would not have been permitted to convict [petitioner] of the lesser-included offenses because it had concluded that the evidence established that he was guilty of the greater offenses."). Accordingly, the postconviction court reasonably rejected this claim.

### B.    Ground Two—Vindictive Prosecution

Mr. Arnold was initially charged with false verification of ownership. (Doc. 13-2, Ex. 2). Approximately three months before trial, the information was amended, and Mr. Arnold was charged with burglary of a dwelling and dealing in stolen property. (*Id.*, Ex. 3). Mr. Arnold argues that the prosecution engaged in "vindictive prosecution" by amending the information. (Doc. 1 at 6). According to him, the amendment was prompted by his partial acquittal in a separate burglary case, in which he was found guilty of the lesser-included offense of trespassing. (*Id.*)

Ground Two is procedurally defaulted. Mr. Arnold first raised the vindictive-prosecution claim in his Rule 3.850 motion. (Doc. 13-2, Ex. 26, at 6-8). The postconviction court held that the claim was "procedurally barred from being raised in a motion for postconviction relief under Rule 3.850." (*Id.*, Ex. 27, at 3). It explained that "vindictive prosecution is a claim of prosecutorial misconduct that could, and should, have been raised at trial and on appeal." (*Id.*) Because "the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds," Ground Two is procedurally defaulted. *LeCroy v. Sec'y, Fla. Dep't Corr.*, 421 F.3d 1237, 1260 n.25 (11th Cir. 2005).

9

To overcome the default, Mr. Arnold must show either cause and prejudice or a miscarriage of justice. *See Mincey v. Head*, 206 F.3d 1106, 1135 (11th Cir. 2000) ("It is well-settled that federal habeas courts may not consider claims that have been defaulted in state court . . . unless the petitioner can show 'cause' for the default and resulting 'prejudice,' or 'a fundamental miscarriage of justice.'"). Mr. Arnold fails to make the required showing. Accordingly, Ground Two is barred from federal habeas review.

### C.    Ground Three—Failure to Investigate and Call "Alibi Witness"

Mr. Arnold faults trial counsel for failing to call his ex-fiancée Sonya Hicks as a witness at trial. (Doc. 1 at 8). As explained above, Mr. Arnold testified that he and Ms. Hicks purchased the stolen jewelry from "a lady named Stacy." (Doc. 13-2, Ex. 5, at 197-98). Mr. Arnold alleges that Ms. Hicks could have "exonerate[d] him" by confirming that she "was with him . . . when he purchased the stolen items" from Stacy. (Doc. 1 at 8). According to Mr. Arnold, counsel "would have learned of this alibi . . . witness" had he conducted a proper investigation. (*Id.*)

Even under *de novo* review, this claim fails for lack of prejudice. The burden of establishing prejudice under *Strickland* "is particularly heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative." *McKiver v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1357, 1365 (11th Cir. 2021). For that reason, "a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness." *Id.* Here, Mr. Arnold presents no evidence—through an affidavit or otherwise—that Ms. Hicks would have corroborated

his story about the stolen items. *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."). "Without such a showing, [Mr. Arnold] cannot demonstrate *Strickland* prejudice." *Afshar v. Sec'y, Dep't of Corr.*, No. 2:24-cv-826-JES-NPM, 2025 WL 404629, at *5 (M.D. Fla. Feb. 5, 2025) (finding no prejudice from failure to call witness because petitioner did not "offer[] [the witness's] sworn testimony detailing what he would have said if deposed or called to testify at trial"); *see also Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("[Petitioner] offers only speculation that the missing witnesses would have been helpful. This kind of speculation is insufficient to carry the burden of a habeas corpus petitioner.").

### D.    Ground Four—Failure to Object to Allegedly Improper Testimony

Mr. Arnold argues that trial counsel provided ineffective assistance by failing to object to several allegedly improper "pieces of testimony." (Doc. 1 at 9-10). First, Mr. Arnold complains that, during his cross-examination, the prosecution elicited testimony that he had previously used a crowbar for an unspecified purpose. (*Id.*; *see also* Doc. 13-2, Ex. 5, at 200). Mr. Arnold did not provide any additional testimony before the jury about his use of crowbars, and the matter did not come up in closing argument. The postconviction court found no prejudice from counsel's failure to object given "the brief and generic nature of the question and answer the jury heard, and the fact that it was not repeated later during closing arguments." (Doc. 13-2, Ex. 27, at 4). In the court's view,

there was "no reasonable probability that, had the jury not heard that [Mr. Arnold] at some time in the past used a crowbar, the result of the proceeding would have been different." (*Id.*)

Mr. Arnold cannot show that the postconviction court's finding of no prejudice "was so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Mungin v. Sec'y, Fla. Dep't of Corr.*, 89 F.4th 1308, 1317 (11th Cir. 2024). Mr. Arnold did not admit to using crowbars to commit crimes, and the prosecution did not discuss crowbars in closing. At most, the reference to crowbars "had an isolated, trivial effect" on "the entire evidentiary picture." *Strickland*, 466 U.S. at 696. In these circumstances, a fairminded jurist could find no "reasonable probability that, but for counsel's [failure to object], the outcome at trial would have been different." *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1261 (11th Cir. 2014).

Second, Mr. Arnold argues that the prosecution improperly questioned him on cross-examination about his use of aliases and his preferences concerning pawn shops. (Doc. 1 at 9-10). Citing Florida law, the postconviction court held that "counsel had no basis to object" to either line of inquiry because Mr. Arnold "opened the door to the State's questions." (Doc. 13-2, Ex. 27, at 4-5). The court noted that, on direct examination, Mr. Arnold acknowledged that he had used the names "Lumberfious Arnold, Lemetrias Dupree, and Terry Sharp." (*Id.*, Ex. 5, at 196-97). This testimony "opened the door to the prosecutor's questions about those names." (*Id.*, Ex. 27, at 5). As for his "preference of pawn shops," Mr. Arnold "testified to pawning the jewelry at issue in the case," which

"opened the door to the prosecutor's questions about how he came to choose th[e] particular pawn shop at which to pawn the jewelry." (*Id.*)

The postconviction court reasonably rejected this claim. "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a federal court "must defer to the state's construction of its own law when the validity of the [ineffective assistance] claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017). Such deference is required here. The postconviction court held that, as a matter of Florida law, any objection would have failed because Mr. Arnold "opened the door to the State's questions." (Doc. 13-2, Ex. 27, at 4-5). Thus, the postconviction court "already has told us how the issue[] would have been resolved under Florida state law had [counsel] done what [Mr. Arnold] argues he should have done." *Herring v. Sec'y Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005). That determination is binding on federal habeas review. *See Colville v. Dixon*, No. 3:21-cv-850-LAC-EMT, 2022 WL 877368, at *19 (N.D. Fla. Mar. 7, 2022) (rejecting *Strickland* claim based on deference to state-court determination that "an objection by defense counsel would have been overruled under state law because counsel opened the door"), *adopted by* 2022 WL 874949 (N.D. Fla. Mar. 24, 2022); *Smith v. McNeil*, No. 3:07-cv-112-RV-EMT, 2010 WL 1192430, at *20 (N.D. Fla. Feb. 19, 2010) ("[T]his court must defer to the state court's determinations of state law issues, including th[e] determination that defense counsel had no meritorious basis to object [because petitioner opened the door].") *adopted by* 2010 WL 1192388 (N.D. Fla. Mar. 23, 2010).

Because the postconviction court "authoritatively decided as a matter of [Florida] law" that any objection would have failed, the remainder of the analysis is straightforward.

*Calhoun v. Warden, Baldwin State Prison*, 92 F.4th 1338, 1351 (11th Cir. 2024). It is well established that "[a] lawyer cannot be deficient for failing to raise a meritless claim." *Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008). Therefore, the postconviction court reasonably concluded that counsel was not ineffective for failing to object to the questions about Mr. Arnold's use of aliases and his preferences regarding pawn shops.

Third, Mr. Arnold complains that the lead detective testified about his "history" of frequenting pawn shops. (Doc. 1 at 9). Specifically, the detective stated that based on his review of an online database, Mr. Arnold had "pawned jewelry in the past." (Doc. 13-2, Ex. 5, at 171). Neither the detective nor any other witness suggested that Mr. Arnold broke the law when he "pawned jewelry in the past." Even under *de novo* review, Mr. Arnold cannot show that he was prejudiced by this testimony. Of course, "frequenting a pawn shop is not illegal," and the prosecution presented no evidence that Mr. Arnold's previous visits to pawn shops involved unlawful activity. *Roundtree v. Adams*, 65 F. App'x 26, 29 (6th Cir. 2003). In these circumstances, there is no "reasonable probability that, but for counsel's [failure to object], the outcome at trial would have been different." *Reed*, 767 F.3d at 1261.

### E.    Ground Five—Denial of Motion for Judgment of Acquittal

Mr. Arnold argues that the trial court violated his constitutional rights by denying his motion for judgment of acquittal on the burglary count. (Doc. 1 at 11-12). According to Mr. Arnold, the prosecution failed to prove that he committed burglary because "[t]he only evidence linking [him] to the [residence] was that he was in possession of some of [the victim's] jewelry." (*Id.* at 12).

14

This claim is unexhausted and procedurally defaulted. Proper exhaustion requires a petitioner to "make the state court aware that the claims asserted present federal constitutional issues." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). A petitioner must do more, however, than "scatter some makeshift needles in the haystack of the state court record." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005). Moreover, a petitioner "does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief" to find the "federal claim." *Baldwin*, 541 U.S. at 32.

Mr. Arnold failed to present his federal claim on direct appeal. In his initial brief, he argued that the trial court erred in denying his motion for judgment of acquittal because "[t]he State's circumstantial evidence not only failed to refute Mr. Arnold's reasonable hypothesis of innocence, but also failed to establish a *prima facie* case of guilt." (Doc. 13-2, Ex. 13, at 15). Mr. Arnold did not, however, cite the United States Constitution or any other source of federal law. Nor did he "label[] the claim 'federal.'" *Baldwin*, 541 U.S. at 32. Instead, Mr. Arnold relied entirely on Florida caselaw to support his argument that the evidence was insufficient to support his burglary conviction. Because Mr. Arnold "did not raise any federal claims or cite to any federal cases in state court when presenting his argument on the sufficiency of the evidence," he "failed to fairly present his federal

sufficiency-of-the-evidence claim to the Florida state courts and thus did not exhaust his state court remedies as to that claim." *Cascante v. Florida*, 816 F. App'x 429, 431 (11th Cir. 2020); *see also Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 459 (11th Cir. 2015) (holding that federal sufficiency-of-the-evidence claim was not exhausted because petitioner "asserted in his [state appellate] brief that his conviction rested on insufficient evidence, without clarifying whether he intended to bring a federal or a state sufficiency of the evidence claim").

Mr. Arnold cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within thirty days of the rendition of a sentence). As a result, this claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138 ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). And because Mr. Arnold has not shown that an exception applies to overcome the default, the claim is barred from federal habeas review.

Even if Mr. Arnold had exhausted a federal constitutional challenge to the sufficiency of the evidence, he would not be entitled to relief. Under the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), a court reviewing a challenge to the sufficiency of the evidence must evaluate whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The *Jackson* standard must be

16

applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Under *Jackson*, the prosecution does not have "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." *Id.* at 326. If the record contains facts supporting conflicting inferences, the jury is presumed to have "resolved any such conflicts in favor of the prosecution." *Id.*

Consistent with AEDPA, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

Mr. Arnold fails to show that the state court's rejection of his sufficiency challenge was "objectively unreasonable." *Id.* To the contrary, the prosecution presented sufficient evidence to convict Mr. Arnold of burglary. The "unexplained possession of recently stolen property is not only sufficient to support a theft conviction, but when a burglary necessarily occurs as an adjunct, the inference of guilt from the unexplained possession of the recently stolen goods also supports a conviction for burglary." *Francis v. State*, 808 So. 2d 110, 134 (Fla. 2001). "Where the defendant's explanation for the possession of recently stolen property is only arguably reasonable, the case goes to the jury." *Yudin v. State*, 117 So. 3d 457, 460 (Fla. 2d DCA 2013).

Here, the prosecution proved that on the day of the burglary, Mr. Arnold sold the victim's stolen property at a pawn shop. (Doc. 13-2, Ex. 5, at 111-12; *see also* Doc. 13-2, Ex. 6). To be sure, Mr. Arnold said that he obtained the items from "a lady named Stacy."

(Doc. 13-2, Ex. 5, at 197-98). But that explanation was "at best only arguably reasonable," so "the issue was . . . properly sent to the jury." *Yudin*, 117 So. 3d at 460. For one thing, Mr. Arnold failed to convincingly explain why he sold the rings at a pawn shop on the same day he allegedly purchased them. Moreover, he "provided no corroboration" for his story about the alleged transaction with Stacy. *Coleman v. State*, 466 So. 2d 395, 397 (Fla. 2d DCA 1985). And his "credibility was . . . impeached by his [five] prior convictions." *Haugabrook v. State*, 827 So. 2d 1065, 1069 (Fla. 2d DCA 2002); *see also Coleman*, 466 So. 2d at 397 (jury "was entitled to conclude that appellant's explanation was unsatisfactory" because, among other things, "his credibility was impeached by his admission that he had been convicted of three prior felonies"). Thus, because Mr. Arnold's possession of recently stolen goods was sufficient to prove that he committed burglary, the trial court reasonably denied his motion for judgment of acquittal. *See Johnson v. Sec'y, Dep't of Corr.*, 737 F. App'x 438, 442 (11th Cir. 2018) (evidence was "more than sufficient to support a conviction for burglary under Florida law" where petitioner "was in possession of the stolen property on the day of the burglary, took the stolen property to a pawn shop with a friend, and untruthfully told the pawn shop employee that the property was his in order to pawn the stolen property").

## F.    Grounds Six and Seven—Prosecutorial Misconduct

Mr. Arnold argues that the prosecution shifted the burden of proof to him by "repeatedly ask[ing]" why he failed to call his ex-fiancée Ms. Hicks as a witness. (Doc. 1 at 18). At trial, Mr. Arnold testified that although he knew Ms. Hicks could be "a witness in the case," he never "list[ed] her as a witness or request[ed] that she be called as a

witness." (Doc. 13-2, Ex. 5, at 210). According to Mr. Arnold, this line of questioning constituted prosecutorial misconduct because it led the jury "to believe that [he] [had] the burden to prove his innocence." (Doc. 1 at 19). Mr. Arnold separately alleges that trial counsel was deficient for failing to "object in a timely manner to the burden shifting," properly move for a mistrial, or "seek a curative instruction." (*Id.* at 16).

Mr. Arnold raised both claims on direct appeal, and the appellate court rejected them without explanation.[1] (Doc. 13-2, Ex. 13, at 17-35; Doc. 13-2, Ex. 15). Thus, Mr. Arnold must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. He cannot do so.

"To find prosecutorial misconduct, a two-pronged test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006). Mr. Arnold's claim of prosecutorial misconduct fails for lack of prejudice, so counsel was not deficient for failing to raise it. *See Freeman*, 536 F.3d at 1233 (noting that "[a] lawyer cannot be deficient for failing to raise a meritless claim").

---

[1] Respondent contends that Mr. Arnold was required to renew his ineffective assistance claim in a Rule 3.850 motion. (Doc. 12 at 32). But "the state appellate court may review on direct appeal an ineffective assistance of counsel claim apparent on the face of the record[,] and [Mr. Arnold] fairly presented the federal nature of the claim" in his appellate brief. *Desir v. Sec'y, Dep't of Corr.*, No. 8:19-cv-414-MSS-AEP, 2022 WL 813823, at *4 (M.D. Fla. Mar. 17, 2022). Thus, Mr. Arnold "adequately exhausted the claim" by raising it on direct appeal. *Id.*

Even assuming the questions were improper, "any potential prejudice regarding burden-shifting was diminished by the prosecution's statement in their closing argument that the burden of proof was theirs to carry and by the trial court's explicit instruction after closing arguments to that same effect." *United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998). Specifically, the prosecutor noted in closing that Mr. Arnold did "not have to be a witness," and he made clear that he did not "want anything I say to be taken as [suggesting that Mr. Arnold] has to do something in this case." (Doc. 13-2, Ex. 5, at 306). Likewise, the trial court properly instructed the jury on the prosecution's burden of proof, explaining that (1) the presumption of innocence "stays with the defendant as to each material allegation in the Information through each stage of the trial unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt"; (2) "the State has [the] burden of proving the crime which . . . the defendant is charged with committing and that the defendant is the person who committed the crime"; and (3) "[t]he defendant is not required to present evidence or prove anything." (*Id.* at 315). These instructions, along with the prosecution's statements to the same effect, "sufficiently erased any doubts as to which party had the burden of proof." *United States v. Iredia*, 866 F.2d 114, 118 (5th Cir. 1989); *see also United States v. Bautista*, 23 F.3d 726, 733 (2d Cir. 1994) ("[W]hatever ambiguity may have been caused by the remark with respect to the burden of proof was undoubtedly clarified by the district court's instruction that the government bore the burden of proof as to every element and that the burden never shifted to the defendants.").

For these reasons, a fairminded jurist could conclude that (1) Mr. Arnold's claim of prosecutorial misconduct failed for lack of prejudice, and (2) counsel was not deficient for failing to press this meritless claim. Therefore, Mr. Arnold is not entitled to relief on Grounds Six and Seven.

## IV.    Conclusion

Accordingly, the Court **ORDERS**:

1. Mr. Arnold's petition (Doc. 1) is **DENIED**.

2. The **CLERK** is directed to enter judgment against Mr. Arnold and to **CLOSE** this case.

3. Mr. Arnold is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Arnold must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Arnold has not made the requisite showing. Because Mr. Arnold is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on March 28, 2025.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE